Good morning, Your Honors. My name is Sharon Dahlberg. I'm appearing on behalf of the petitioner Robson Freire, and I would like to reserve two minutes for rebuttal for my co-counsel, Kari Hong. Your Honors, in this case, the immigration judge found that Freire's demeanor was appropriate and that his testimony was consistent with his written declaration. The immigration judge, nevertheless, found that he was not credible. This negative credibility standing is contrary to law, not supported by substantial evidence, and violates Freire's due process rights. Your Honors, this Court has jurisdiction to hear the constitutional challenges that Freire raises. The section that this concerns is 1158A3. 1158A3 concerns a discrete action of the Attorney General under 1158A2. A constitutional violation is not a discrete action under 1158A2. Therefore, this Court still retains jurisdiction to hear the constitutional violations committed by the immigration judge. Hakim supports this Court's taking jurisdiction over this case. What is this constitutional violation you're talking about? There were two constitutional violations, Your Honor, two very pervasive constitutional violations. The first one is the immigration judge failed to give notice and an opportunity to respond to a credibility concern. And this Court is clear in Mendoza and Menendez. That sounds like we're just reviewing the substance of the decision. You have to show, if this is reviewable at all, you have to show the determination that he filed late, right? He did, Your Honor. And the question is whether or not in deciding to reject the petition, even though it wasn't timely, whether the BIA's application of the standard violated due process. It was so far outside of the norm set forth by Congress that it violated due process. That's the only due process issue that we can even arguably reach. Yes, Your Honor, I agree. So what is that issue? What is the claim here? The claim here, as I understand it, his claim was I couldn't do it timely because I had post-traumatic shock syndrome. And the IJ looked at it and said, he didn't say, oh, this can never qualify, Your Honor. He said, I just don't believe him. It's a very selective kind of thing. He says he can't deal with government, but here he's dealing with officers of other government agencies. He's getting medical treatment. He's going to see three lawyers or people he thought were lawyers. He's out there thinking about it. So I just don't buy his explanation that this is caused by post-traumatic shock syndrome. Where's the constitutional violation there? Well, Your Honor, there's two constitutional violations again. One of them was a failure to give notice of credibility because, again ---- Let's put that one aside because you don't get to it until we get into the hearing. He doesn't even have a case before the IJ until you show that the failure to accept his application was somehow a constitutional violation. I just want to remind the Court, as I know you know, that you do have the jurisdiction over the withholding and the CAT. But going back to jurisdiction over the assignment ---- You want to talk about that? That's fine. I thought you were talking about the constitutional violation. I thought you were talking ---- If you want to waste your time ---- I want to talk about the constitutional violation. I asked you a question. Yes. I asked you a question, okay? Do you want to answer it? Yes, I do, Your Honor. Okay. The issue is that what the immigration judge said was that his testimony was not as detailed as a written declaration. There's no specifics in that. We have no idea what testimony he's referring to when he says that. And so that does cover the entire hearing. That's one issue. The other issue is the issue that the immigration judge abandoned his role as a neutral fact finder. It is pervasive throughout this record. I don't think we're communicating. Okay. You can't even get there. You know, we can talk about these things in terms of withholding, but I assume you're discussing the asylum claim. You don't even get to the door to see an immigration judge. You don't see the inside of the courtroom unless you've got a timely asylum application. Okay? So we can't review the determination of the application whether it's timely unless there's something about the decision to hold it untimely that itself violates the Constitution. If you look at our cases, your only argument is that the way the agency applies the statute is so far outside the realm of what Congress has given as a standard that it violates the process. And that's based on a case from our circuit by the name of Ramirez Perez. Okay? That's the constitutional violation you have to establish before we can get to talk about any of the other stuff. So the question is, my question to you is, where is the constitutional violation in the determination not to accept his asylum application? Well, again, it was the ‑‑ I believe it was the abandonment of his role as a neutral fact finder. And if you look at all the facts surrounding the one‑year bar, they were not based on the evidence. He completely disregarded the testimony of Dukat. Despite the fact that he didn't find him not credible, he disregarded that testimony when reviewing Frere's testimony about the one‑year issue. He made statements in the record such as that there was this larger knowledgeable gay population that Frere was a member of. There is absolutely no evidence in the record to suggest that. He claimed that the PCS ‑‑ You're throwing words at me, but you're really not focusing or answering the question. The statute sets forth a standard for allowing somebody to file something past the one‑year. We are told we can't review the decision to deny an application for being late. The only way we can get in is to say that the way the agency applied the statutory standard, it was so far beyond what Congress intended that that's how I understand our cases, that it's not supported by the statutory language. So let's start with the statutory language and then show me that the determination by the IJ to say this doesn't fall within the statutory language is so far beyond what Congress could have intended that it was a due process violation. Well, I believe that the case law, what it says is that when there is a violation, a constitutional violation, not that just in the decision, that the constitutional violation takes it out of a determination within the statute. And because there was a constitutional violation, we're not asking you to review whether he filed within the one year or whether he had extraordinary circumstances. What you're really saying is he didn't have a fair hearing, isn't that what you're saying? Yes, exactly, Your Honor, that he did not have a fair hearing. Well, I understand that's what you're saying, but that doesn't help your case. Saying I didn't have a fair hearing doesn't ‑‑ you don't get to it until you can show that the agency, that this has become, that the decision not to file an asylum application is reviewable. Well, again, I believe what the case law says is that when there is a constitutional violation, it's not an act under the ‑‑ under the statute, and therefore it is reviewable by this Court. But again, we're only asking that this Court review the constitutional violation and determine that there was a constitutional violation and therefore the case should be remanded on the asylum case. Say we disagree with you on that. Where do we go from there? Well, then, Your Honor, you have jurisdiction over the withholding of the CAC claim and Ferrer is clearly eligible for withholding, and the credibility determination was not supported by substantial evidence. And as I started to say, there was no factual basis for the IJ's credibility determination. He found that ‑‑ He made a page worth of ‑‑ he had a page worth of discussion that struck me as fairly persuasive. He says, look, the guy talks about, he keeps giving inconsistent stories about why he didn't apply, and when he's questioned about it, he comes up with a different story. And it's on page ‑‑ let's see on the ‑‑ what's wrong with that discussion? Excuse me? What's wrong with that determination? I'm trying to find it. Well, we're talking about, I think, the asylum case or the withholding case right now and his testimony regarding the person ‑‑ We're talking about the withholding case. Right, so his testimony regarding the persecution. This is page 20, 19 through 21 of the IJ's decision discusses why he didn't believe him. And it sounds perfectly plausible to me. Well, again, the immigration judge found that his demeanor was appropriate, found that his testimony was consistent with his declaration. In terms of the persecution, the immigration judge made two findings. He found that his testimony was not as detailed as his declaration, which, again, is a violation of his due process because the immigration judge on several occasions moved Frere on and said, we don't need to hear your testimony because we have a detailed declaration. Number two, the immigration judge, there's only one place where he points out what he calls an implausibility in the actual testimony, and that is whether when Frere told the hospital why he was ‑‑ that he had a dancing accident and not that he was attacked by a gang, he explained that when he had previously gone to the hospital, he told that he was attacked by a gang and he got poor treatment. So the second time he told him it was a dancing accident. And the immigration judge said that was not plausible, despite the fact that there's 450 pages of documentation showing the mistreatment of gay people in Brazil because of their sexual orientation. He didn't have to say it was a gay bashing gang. He could just say he got ‑‑ Certainly. By a gang. That's what they said. You don't have to go saying what their purpose was. But his actual credibility determination is at page 20. It doesn't even go into that. It's at page 20 of the IJ's decision. And he deals with your client's testimony regarding why he didn't and why he did and why he didn't file an asylum application timely. Seems very persuasive. Quite thorough. If I may answer both of those issues. The first issue in terms of the testimony regarding the hospital, your recent decision in Chen addresses that issue directly, that the immigration judge did not give any notice or an opportunity to explain why he didn't say it was based on the attack and not sexual orientation. So that is something that this court needs to remand at least for him to give an opportunity to explain that. In terms of the opinion at 19 to 20, there is no inconsistency. The judge points to no inconsistency. Most of the factual basis ‑‑ The respondent claimed that he had an aversion to past post traumatic stress disorder, dealing with government agencies and health care providers and hospitals. Yet his actual conduct during the period in question revealed that he had extensive contacts with health care providers and government agencies in the United States. When confronted with inconsistencies, the respondent admitted that he not only really had problems in the United States dealing with INS because of his post traumatic stress disorder, this was inconsistent with his act of retaining three attorneys to advise him about this. So he said, I can't deal with government agencies. And his point is that, well, you did deal with government agencies in getting treatment. He said, oh, I can only deal, you know, I can't deal with INS because I can't face this. But as you were saying, you can't face the situation in Brazil. You went to three lawyers to talk about this very issue. Now, this may not be something that persuades you, but why isn't this a rational judgment that a fact finder can make? Because, Your Honor, there wasn't any inconsistency. Freer explained that he was afraid of ‑‑ I mean, he was never inconsistent. He explained he was afraid of ‑‑ It sounds inconsistent to me. But this is the ‑‑ you're reading from the IJ's decision and the IJ's interpretation of the facts, that the actual record doesn't ‑‑ Did he in fact say he feared dealing with INS? Yes, he did. He clearly said that. Did he in fact go talk to three attorneys about his situation? He, yes, but he never told them, or at least the first attorney he spoke to, he never told them that he was afraid to go back to Brazil because he was gay and he was afraid of being executed. But he was dealing with his situation. And he said, I can't deal with INS. I can't deal with INS because I can't think about Brazil. He goes and he talks to a lawyer about this very question, about the possibility of going back to Brazil and staying here. Right, and, Your Honor, that's what ‑‑ You may think these are reconcilable, but did he say, I can't deal with government agencies? No, there's no place where he said he couldn't deal with government agencies. There's a couple of places where when asked if he was afraid to deal with government agencies, what he said is that he is used to the ridicule and mistreatment, and that is normal. He was able to distinguish between the police who would harm and beat him and government agencies where he would just face ridicule. But, again, Dukat testified. We had an expert witness in this case that explained that because of the posttraumatic stress disorder, he would not behave in the way that we would consider a rational person to behave, that he would make halting gestures towards possibly addressing his immigration situation, that he would be slow to act on knowledge once he got it. He would not want knowledge. That may be a reason why the IJ could have decided the credibility issue out of the way, but the question is not whether he could have decided it in the view of client's favor, but whether or not the decision he made was rational. He had rational reasons for making the credibility finding he did, and he might have gone the other way, but it just doesn't strike me that this is the kind of reasons he gave that are contrived or made up or insubstantial. To me, it struck me that what he was saying, he was giving inconsistent stories about his own failure to file an asylum petition on time. You know, again, a judge needs to provide specific cogent reasons to find something not credible, and what we have here are not specific cogent reasons. They are not based on the facts of the record. They're factually incorrect, and they're mostly based on implausibility. I mean, the court says, the judge says, you know, the respondent cannot have his cake and eat it too, and that it's implausible that he didn't know about asylum because he was a member of a larger knowledgeable community. Is there something about cake and eating that is implausible? It's a common metaphor for saying he's taking inconsistent positions. Is something offensive or improper about using that metaphor? I find it that he was dismissing Ferrer's credible testimony, and he also, again, found him not plausible because he found him to be a member of a larger knowledgeable community. There is nothing in the record. In fact, if you look at the record, every time he asked Mr. Ferrer, do you have a lot of gay Brazilian friends or are you part of the gay community, in New York, he said no. Do you have a lot of friends in New York? No. But there is a large gay community in New York. Don't you know that? No, I don't know that. He completely twisted the facts in this case and did not base his decision on the facts in this record. I'd like to save time for rebuttal. How about your partner? He's going to do the rebuttal. Are you going to do the rebuttal? Yes, Your Honor. May it please the Court. My name is Andrew McLaughlin, and I represent the Respondent Attorney General of the United States in this case. I appreciate the excellent discussion that's happened so far, and it helps to focus my argument a little bit to try to bring. Well, let's see if we can focus it on the other side. The Petitioner had a right to present, irrespective of the timeliness of his asylum application, he had a right to present evidence on withholding in Kat, right? That is correct, Your Honor. And if we looked in a hypothetical case, if we looked at the record in a case that was purely brought on withholding in Kat with the tag-along of here's why I didn't apply for asylum, and we looked at the evidence and there was a credibility determination in favor of the Petitioner that we agreed with or an adverse credibility finding where we found it was not substantiated, we could look at that evidence that came out in the withholding in Kat hearing to determine whether there was a proper excuse for an untimely filing of the, in terms of a due process violation for the asylum claim, right? I'm not asking you to concede that that's this case, but in that scenario, we could look at those facts to determine if there was a due process violation. No, Your Honor. We could. Let me put it to you this way. If you were to determine, as I think you would. Let me ask for the same treatment Judge Kaczynski asked for. Will you start by answering the question? The answer is no, Your Honor. Okay. Tell me why. The reason is the – in order – we essentially have two separate hearings that took place in this case. One to determine whether or not there was a – whether asylum was at issue, and the second hearing on withholding in Kat. And they took place in that order, and the adverse credibility determination was in fact made initially in the first of the two parts of the hearing based on the credibility of the testimony associated with – so let me set that aside. Your response is you would have us compartmentalize the adverse credibility finding as to the asylum claim. In order to – Again, no. Yes. That is correct, Your Honor. There were in fact – In terms of our analysis, we should look at that adverse credibility determination and isolate it as to the timeliness of the asylum claim. In terms of whether or not it was appropriate with respect to the asylum claim, that's correct. However, this Court – and I just – this didn't occur to me until I was just hearing the dialogue here today. This Court held recently in a case called Kaloubi that if you make an adverse credibility determination one way or the other, it applies to all matters in all circumstances. So given that the adverse credibility determination was made in the context of whether or not extraordinary circumstances for asylum existed, for untimely asylum existed – So the way we run these immigration hearings these days is if this is the sort of menu, an arguably untimely, colorably untimely asylum claim, but a withholding claim and a cat claim, and the I.J. takes the asylum excuse, if you will, why didn't you file on time, takes that first and doesn't believe the reasons the petitioner offers for not having filed on time, I was afraid of going into a government office or whatever. At that point, the immigration judge says to herself or himself, I don't believe this guy and I don't have to believe anything he says about the merits of his withholding or cat claim. Is that the government's position? It puts me in an interesting situation because I argued the opposite in the Kaloubi case, and this Court rejected that argument when I argued it in the Kaloubi case. They said – and at the end of the case, they said we establish as a rule if you find adverse credibility or finding uncredibility in one circumstance applies to everything else associated with that relief. So it's really this Court that has this rule, not necessarily something that the INS wants. It was new and it had not been decided before the Kaloubi case. But you, of course, will follow the rule of this Court. Yes, Your Honor. Now, with respect to the constitutional issue, there is no constitutional issue associated with the asylum portion of this. There is no allegation that the asylum hearing was in any way tainted. It was certain – if you read the record, it was very full and very fair. There is no allegation that anything that was done in the extraordinary circumstances part of that hearing was inappropriate. Our case law also requires that an adverse credibility determination when it comes to the merits of an asylum withholding or cat claim must go to the heart of the claim. Can you point to what adverse credibility determination the I.J. made that went to the heart of the withholding or cat claim? Well, there's two parts to that. And the first part, again, is something that just occurred to me, so it doesn't actually appear in our brief. It clearly goes to the heart of the asylum whether – the extraordinary circumstances asylum. That wasn't my question. I understand. You're trying to answer a question you want to ask. I want you to answer my question. I'm about to do that. And I just want to add that – All I want is a list. I don't want a long-winded windup. I want a list. So – What specific adverse credibility findings that the I.J. made went to the heart of the withholding or cat claim? My first point is that the I.J. was bound by his initial adverse credibility determination. Okay. We've heard that argument. The second point is this Court and some other – sometimes we slip in – this particular factual finding made by the I.J. relative to adverse credibility goes to the heart of the withholding or cat claim. Number one is? Number one is why did the alien – why does the alien fear to return the country to Brazil? Why did he leave is relevant to that. So this whole question of when you got to the United States, what did you do and why? What did you intend to do when you left Brazil is incredibly relevant to the issue of why he fears returning. And the immigration judge found that this alien's reasoning was not what he was saying. It was false. He contradicted himself in that reasoning. And that implied to the immigration judge – What did he say? The immigration judge gave a list of seven different things. What did the alien say? There was one point – he said at one point that he was afraid to – first he said he didn't know, but, in fact, the person who had told him to come to the United – He didn't know what? He didn't know that he could apply for asylum in the United States. Now you're back on the asylum claim. Now you're back on the asylum claim. You say the I.J. found that there were inconsistencies that went to the heart of the withholding or cat claim. Yes. And you started by saying his reasons for fleeing Brazil in the first place. Right. Your Honor, to qualify for withholding, you first must be a refugee. The definition of refugee is you left your country and are afraid to return for a particular reason. He said 20 years of harassment by street gangs and the police. That's right. And that was inconsistent. Male rape, assault, beatings, forced sex. And that was inconsistent with what he did when he reached the United States because if he indeed had that reasoning for leaving, he would have behaved differently. Now that's what the immigration judge held. What would he have done here? He would have applied for asylum when he got here. That was his reasoning for leaving. We've never accepted that as a matter of law. You know, I would say 95 percent of the asylum claims, withholding claims, cat claims we get – you know this – involve people who are out of status when they make the application. Usually it happens when the deportation or removal notice is served on them. You know that. Yes, Your Honor. So how could that possibly be inconsistent with his claim of why he left Brazil? That happens all the time. There may be. It's a rare case. I see maybe one or two cases a year of immigration cases where the person applies for asylum when they're in status. There may be cases in which there is a reason other than that which excuses their failure to apply. I don't think I've ever seen – I've been on the bench 10 years. I don't think I've ever seen an immigration judge say, the reason I don't believe you is you didn't apply for asylum when you were here lawfully. You waited until you were out of steps. I have seen a variety of cases in which the circumstances of the departure from the country and how you behaved on your way to the United States and after you became to the United States, inconsistencies in those matters have reached the level – because that is central. Let's hear the next item on your list of inconsistencies going to the heart of the withholding. The only other specific one that is identified is the clear inconsistency between his testimony and the document that he offered in support of his testimony about – now admittedly it happened 19 or 20 years prior to his leaving, but associated with the breaking of the leg. The immigration judge looked at that and said, look – And our case law is if there's an inconsistency and the witness offers an explanation, the IJ is bound as a matter of our case law to address that explanation. Did he? Yes, Your Honor. What did he say? He said that the explanation was implausible for exactly the reasons that Judge Kuczynski identified. Implausible because? The story was his leg was broken by a gang of anti-gay thugs. And his explanation was this had happened once before when he went to the hospital and said what really happened, he got bad treatment. Right. So the next time it happened, he went in and said it was a dancing accident. And the immigration judge said – I don't believe that. He says, look, that doesn't make any sense. All you had to say is somebody beat me up. Somebody hit me. You don't have to say I'm homosexual, therefore somebody hit me, therefore don't give me treatment or treat me poorly. All you have to say is somebody beat me up. And that makes sense and it doesn't make sense to say I broke my leg dancing unless you broke your leg dancing. So he's in there with a broken leg and he gets beaten up and he's supposed to be thinking about all these things, huh? Oh, he was clearly thinking about it. He says the reason he said – Well, he didn't want to tell them because the last time he told them, you know, they gave him poor treatment and they ridiculed him. The question, Your Honor, as Judge Kaczynski pointed out, is not – For me like this, the immigration judge has got a brain of stone, you know. The question is whether a reasonable fact finder could not reach the conclusion that the immigration judge reached. I don't see how a reasonable fact finder could reach that conclusion. You know, if he knew anything about life and people and what's going on in this world, I don't know how he could reach that conclusion. I would disagree, Your Honor. I think he's – I'll explain it to you. No, you don't have to explain it to me. There's a lot of suffering. There's a lot of suffering in this world. There's a lot of people suffering from depression and post-traumatic stress disorder. You know, it's a real thing. It's a real thing. It's painful for them. You understand that? Yes, Your Honor. Yeah. And I remember you can go down the – went down the Union Rescue Mission with Judge Valentine from San Diego. We were working to set up a homeless court, and here were guys that were lying on the sidewalk 12 feet from the door, 12 feet from the door. There they were, you know. Why didn't they get up and just walk to the door and ask for help, huh? Why? You know why? Because that 12 feet from where they were lying on the sidewalk to the door would be the longest, hardest journey they'd ever taken their lives. Well, that's ridiculous, 12 feet. You know, four paces. Who's going to believe that kind of stuff, you know? Yes, Your Honor. Unless you lived and you've dealt with people, you can understand that. But if you're just sitting up there and wondering how you're going to get through your big caseload and don't care, it's another thing, I suppose. But that's just my view. It's not my view. Well, I'm glad we have differences of opinion. But Judge Kaczynski is a young man. He'll age like fine wine. He's getting better with time, I noticed. It is the position of the government that certainly some reasonable fact-finders reasonably reached the conclusion that this statement by the alien was inconsistent and his explanation was implausible, and that therefore that supports the immigration judge's finding. It's the government's position in any event that the inconsistency does not have to go to the heart of the asylum claim or the withholding claim. It merely can be based on a collateral matter, so long as it's something where the misstatement helps the immigrant's position. Yes. Well, what our cases say is you can't make a credible determination of something that doesn't matter, doesn't go to the heart of the issue. That's right. Here the question of whether the asylum claim was timely was something that did go very much to the heart of the issue presented. This Court's analysis regarding what makes an issue central to the claim is whether or not it helps his claim or not. And in this case, that collateral matter to withholding, his whether or not he had extraordinary circumstances regarding timeliness, clearly helped his claim. It was clearly done for that purpose to help his to assist in his claim. If it succeeded, he would then have an asylum claim, which, of course, gives much broader relief and deeper relief than the standard that's much more favorable. And we might not even be here today, Your Honor. In this kind of human setting, it is. What did you do before you joined the Department of Justice? I was in the Marine Corps, Your Honor. Yeah, we could tell, you know. You're looking at two of us here. So you could use a little trimming on your haircut. Yeah, I'm feeling a little shaggy, Your Honor. Yeah. Where did you serve? I served for 14 years. I was everywhere. I was in Somalia. I was in Yugoslavia. Well, you've had some experience in life. Welcome home. Thank you. If there are no further questions, I have nothing more, Your Honor. Thank you. Ari Hong for the Petitioner. I would like to begin by reminding the Court that the Supreme Court has held that in the Batson context that impermissible bias is not shown by explicit or expressed language. Rather, indicia of bias is seen through fantastic or implausible justification provided by the fact finder. To respond to Judge Hawkins' earlier question, if we turn to the seven questions, the seven reasons that the immigration judge listed in determining that the one-year bar claim was not met, we find that we have frivolous and fantastic justifications. First of all, the IJ said that Freer had failed to avail himself of legal referrals at administration record 100. However, the testimony at AR 218 to 219, Freer said that he attempted to contact other attorneys. A second factual finding was that the IJ said that Freer was not afraid of the U.S. police, AR 91. Freer, however, said that he was afraid of the U.S. police at 207. And furthermore, Dr. Ducotte testified that when the two were meeting in his office, Freer broke into a sweat and started shaking at the sight of a San Francisco police officer, AR 173. The only reason for dismissing the PTS-related testimony as, quote, implausible was that Freer cannot have his cake and eat it, too. Furthermore, the issue is that the IJ dismissed the claim that he had relied on bad or incorrect legal advice because he failed to file a claim of ineffective assistance to counsel at AR 102. If you look at all of these reasons together, and we turn back to the case law, Sanchez-Cruz allows that an oral decision that was factually incorrect or mischaracterized the evidence is indicative of bias. If we look at Colmenar, if we look at the times in which the IJ did not allow the alien to present evidence and testimony, that is a sign of bias. If you look at Reyes-Melendez, we have a situation in which an immigration interrupts repeatedly direct examination of the alien, ignored uncontested facts, and misrepresents the record and oral decision. And in all these situations, this court found that that is constitutional error and a structural error. If we turn back to Kano-Morita, we have a situation in which when the IJ denies an alien the opportunity to present evidence at a hearing, the IJ has committed structural error. If you look at the litany of mischaracterizations and factual inaccuracies by the immigration judge, we have a structural error and we contend that this is the bias that is evident and this is the constitutional error that gives this court jurisdiction to consider the asylum claim. If there are no further questions, I'll sit down. Thank you. Thank you.
judges: Pregerson, Kozinski, Hawkins